# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL RAMOS,<br><br>    Petitioner,<br><br>    v.<br><br>WARDEN, F.C.I. MENDOTA,<br><br>    Respondent. | Case No. 1:23-cv-00922-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING PETITIONER'S MOTION TO AMEND BE DENIED, RESPONDENT'S MOTION TO DISMISS BE GRANTED, AND PETITION FOR WRIT OF HABEAS CORPUS BE DISMISSED<br><br>(ECF Nos. 9, 10)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

On June 28, 2007, Petitioner pleaded guilty to possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, and illegal reentry of a deported alien. On November 8, 2007, Petitioner was sentenced to an imprisonment term of 360 months, which was later reduced to 240 months. (ECF No. 9 at 2.[1]) Petitioner is currently incarcerated at the Federal Correctional Institution in Mendota, California. (ECF No. 1 at 1.) In the petition, Petitioner challenges the Federal Bureau of Prisons' policy 5410.01, "last amended March 10,

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

1 2023." (ECF No. 1 at 2.) Petitioner alleges that the policy excludes inmates with immigration detainers, like Petitioner, from applying First Step Act ("FSA") Earned Time Credits ("FTCs" or "ETCs"). (Id. at 2, 6.) Petitioner requests that the Court direct the Federal Bureau of Prison ("BOP") to immediately calculate and apply all of the FTCs to which he is entitled. (Id. at 7.)

On September 22, 2023, Respondent filed a motion to dismiss the petition on the following grounds: (1) the Court lacks "statutory authority under § 2241 to compel BOP discretionary (sentence end-phase programming) action via declaratory and advisory opinions"; (2) failure to exhaust administrative remedies; (3) lack of constitutional standing and failure to state a claim because Petitioner is the subject of a final order of removal. (ECF No. 9 at 2, 3.) On February 14, 2024, Petitioner lodged another petition. (ECF No. 10.) On March 26, 2024, the Court ordered Respondent to file a copy of Petitioner's purported final order of removal. (ECF No. 11.) On May 7, 2024, the final order of removal was filed. (ECF No. 17.) To date, no opposition or statement of non-opposition to the motion to dismiss has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Lodged Amended Petition

"The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, [is] made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11[.]" Mayle v. Felix, 545 U.S. 644, 655 (2005). Rule 15(a)(1) provides that within twenty-one days after service of a responsive pleading or a motion to dismiss, a "party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) allows pleading amendments with "leave of court" at any time during a proceeding. Fed. R. Civ. P. 15(a)(2). Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "In assessing whether leave to amend is proper, courts consider 'the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment.'" Kroessler v. CVS Health Corp., 977 F.3d 803, 814–15 (9th Cir. 2020) (quoting

Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989)). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

Here, the lodged amended petition was filed more than twenty-one days after service of the motion to dismiss. Therefore, Petitioner is not entitled to amend his pleading as a matter of course pursuant to Rule 15(a)(1). As to whether the Court will grant Petitioner leave to amend, the Court notes that the lodged amended petition predates the original petition commencing this action. Additionally, the Court cannot discern any notable change in substance between the original petition and the lodged amended petition. See Murray v. Schriro, 745 F.3d 984, 1015 (9th Cir. 2014) ("[P]roposed amendments [are futile when they] are . . . duplicative of existing claims . . . ." (second alteration in original) (quoting Bonin, 59 F.3d at 846)). Accordingly, to the extent Petitioner's submission of another petition in this matter can be construed as a motion to amend, the Court recommends that the motion be denied.

**B. Motion to Dismiss**

1. First Step Act and Earned Time Credits

"On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, was enacted. The Act implemented a number of prison and sentencing reforms." Bottinelli v. Salazar, 929 F.3d 1196, 1197 (9th Cir. 2019). With respect to earned time credit, the Ninth Circuit has described the First Step Act's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system.[2] [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196–97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210–13.

Bottinelli, 929 F.3d at 1197–98 (footnote in original).

---

[2] In contrast to good time credit, earned time credit is awarded for "successfully complet[ing] evidence-based recidivism reduction programming or productive activities." § 101(a), 132 Stat. at 5198.

1    Section 3632(d)(4)(A) provides that "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits[.]" 18 U.S.C. § 3632(d)(4)(A). "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

However, subparagraph (E) provides:

**(E) Deportable prisoners ineligible to apply time credits.**--

> **(i) In general.**--A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).
>
> **(ii) Proceedings.**--The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

18 U.S.C. § 3632(d)(4)(E).

On November 18, 2022, the BOP issued Program Statement 5410.01, *First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4)*, which precluded prisoners with immigration detainers from applying earned time credits. On February 6, 2023, the BOP issued Change Notice 5410.01 CN-1. Fed. Bureau of Prisons, Change Notice No. 541001 CN-1 (Feb. 6, 2023), https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last visited June 10, 2024).[3] "As a result of Change Notice 5410.01, federal prisoners subject to immigration detainers are no longer automatically prohibited from applying their earned time credits."

---

[3] The Court takes judicial notice of the BOP program statement and change notice. Fed. R. Evid. 201. See United States v. Thornton, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of BOP program statement); United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record[.]").

4

Alatorre v. Derr, No. CV 22-00516 JMS-WRP, 2023 WL 2599546, at *5 (D. Haw. Mar. 22, 2023).

2. Jurisdiction

Respondent asserts that "[t]he instant petition must be dismissed for lack of statutory authority under § 2241 to compel BOP discretionary (sentence end-phase programming) action via declaratory and advisory opinions." (ECF No. 9 at 2.) Respondent argues:

> In addition to Petitioner's instant § 2241 demand being constitutionally infirm and the lack of any dispositive decision from BOP via administrative review, Petitioner otherwise fails to state a claim under § 2241 for an order compelling BOP action, *i.e.*, compelled discretionary application of FSA ETCs as discretionary sentence-offsets to advance similarly discretionary advancement of prerelease sentence end-phase programming (e.g., RRC or TSR). These discretionary actions, which involve, among other things, agency inmate evaluations and assessment of available resources, are entrusted by law — such as inmate specific, individualized, FSA ETC earning via EBRR and PA programming — to BOP *discretionary* action. *See e.g., Diez-Morejon v. Warden, FCI-Mendota,* No. 22-1589-SKO, slip op., 2023 WL 3202864 (E.D. Cal., May 2, 2023) (holding "[w]hether or not the BOP grants Petitioner credits under the FSA is entirely within its discretion" and the "failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest") (citing *Mejia-Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)).

(ECF No. 9 at 4–5.)

"Although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or *exceeded its statutory authority* when it acted pursuant to 18 U.S.C. § 3621." Rodriguez v. Copenhaver, 823 F.3d 1238, 1242 (9th Cir. 2016) (emphasis added) (citing Close v. Thomas, 653 F.3d 970, 973–74 (9th Cir. 2011)). As set forth above, under 18 U.S.C.§ 3632(d)(4)(C), "[t]ime credits earned . . . by prisoners who participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release" and the Director of the BOP "*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). "The BOP is therefore required to apply time credits to eligible prisoners who have earned them and cannot categorically make prisoners ineligible for such credits in a manner that contravenes the statutory scheme set forth in 18 U.S.C. § 3632." Sierra v. Jacquez, No. 2:22-cv-01509-RSL-BAT, 2022 WL 18046701, at *4 (W.D. Wash. Dec.

27, 2022), report and recommendation adopted, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023). Accordingly, the Court finds that dismissal is not warranted on the ground that it lacks jurisdiction to compel BOP discretionary action regarding FTCs because application of FTCs to eligible prisoners who have earned them is *required*, not discretionary, under the statute.

### 3. Exhaustion

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived if pursuing administrative remedies would be futile. Id.

Respondent contends that the "FSA's own exhaustion requirement under 18 U.S.C. § 3582(c)(l)(A) is a claim-processing rule that does not permit a district court to excuse a petitioner's failure to exhaust administrative remedies if the failure to do so is properly raised by the government," citing to United States v. Keller, 2 F.4th 1278, 1282 (9th Cir 2021), and United States v. Hemmelgarn, 15 F.4th 1027, 1030–31 (10th Cir. 2021). (ECF No. 9 at 4.) However, 18 U.S.C. § 3582(c)(l)(A) governs compassionate release and modifications of an imposed term of imprisonment, which are not at issue in the instant petition. While the Court appreciates that in the "context of the prudential exhaustion of administrative remedies, the issue of whether 'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme' is a key consideration," Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)), the Court finds that the exhaustion requirement should be excused in this case due to futility because Respondent has determined that "Petitioner is jurisdictionally and statutorily barred from FSA ETC sentence-offsets due to a final order of removal." (ECF No. 9 at 3.)

### 4. Whether Petitioner is the Subject of a Final Order of Removal

A prisoner is ineligible to apply FTCs "if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." 18 U.S.C. § 3632(d)(4)(E)(i). Here, Respondent argues that Petitioner is ineligible to apply FTCs because

he is subject to a final order of removal. (ECF No. 9 at 3.) Respondent has filed a copy of a final administrative removal order under section 238(b) of the Immigration and Nationality Act ("INA"), dated March 1, 2005, and issued against Petitioner. (ECF No. 17.)

"Expedited removal proceedings for non-citizens convicted of committing aggravated felonies are a creation of INA § 242A(b), later redesignated as INA § 238(b) and currently codified at 8 U.S.C. §1228(b)," Zuniga v. Barr, 946 F.3d 464, 468 (9th Cir. 2019), which "authorizes DHS to order a limited class of non-citizens removed from the country without affording them a hearing before an immigration judge," Gomez-Velazco v. Sessions, 879 F.3d 989, 991 (9th Cir. 2018). "[A] 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation,'" Nasrallah v. Barr, 590 U.S. 573, 579 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)), and the Ninth Circuit has recognized that expedited removal proceedings result in final orders of removal. See Lopez v. Garland, 40 F.4th 996, 1001 (9th Cir. 2022), cert. denied sub nom. Luvian v. Garland, 143 S. Ct. 2461 (2023); Alcala v. Holder, 563 F.3d 1009, 1014 (9th Cir. 2009). Here, the final administrative removal order states that Petitioner is "deportable as an alien convicted of an aggravated felony" and orders that Petitioner be removed from the United States. (ECF No. 17 at 2.)

The Court notes that the final order of removal issued against Petitioner is dated March 1, 2005, approximately nineteen years ago. "When an alien subject to removal leaves the country, the removal order is deemed to be executed. If the alien reenters the country illegally, the order may not be executed against him unless it has been 'reinstated' by an authorized official." Morales–Izquierdo v. Gonzales, 486 F.3d 484, 487 (9th Cir. 2007). The Ninth Circuit has "stressed that reinstatement is not 'automatic' and instead requires the government to follow certain procedures to obtain a reinstated removal order." Lopez, 40 F.4th at 1001 (citing Alcala, 563 F.3d at 1013, and Galindo-Romero v. Holder, 640 F.3d 873, 879–80 (9th Cir. 2011)). There is nothing in the record before this Court establishing that the government has fulfilled the requirements to secure reinstatement of Petitioner's 2005 final order of removal.

However, whether the government has fulfilled the requirements to secure reinstatement of Petitioner's 2005 removal order and whether said removal order may be executed against

Petitioner are distinct questions from whether Petitioner "is the subject of a final order of removal under any provision of the immigration laws" under the statute. 18 U.S.C. § 3632(d)(4)(E)(i). Here, the record reflects that a final order of removal exists and Petitioner is the subject of said order. In fact, Petitioner pleaded guilty to reentry of a deported alien, and in his plea agreement Petitioner acknowledged that he "had previously been deported or removed from the United States on or about March 2, 2005." Plea Agreement, United States v. Ramos, No. 4:07-cr-00057-BBM (D. Mont. June 25, 2007), ECF No. 50.[4] Accordingly, the Court finds that Petitioner is "the subject of a final order of removal under any provision of the immigration laws" for purposes of 18 U.S.C. § 3632(d)(4)(E)(i), and thus, is ineligible to apply First Step Act earned time credits. See Solis-Torres v. FCI Mendota Warden, No. 1:23-cv-0358-JLT-SAB, 2024 WL 1313049 (E.D. Cal. Mar. 27, 2024) (adopting finding and recommendations and holding that petitioner is not eligible for FSA time credits due to expedited removal order); Cuevas v. Birkholz, No. 2:23-cv-07287-GW-JC, 2024 WL 2702918, at *2 (C.D. Cal. Mar. 29, 2024) ("Here, Petitioner is subject to a final removal order . . . requiring his removal to Mexico. He is therefore statutorily ineligible for the application of time credits under the First Step Act[.]"), report and recommendation adopted, 2024 WL 2702652 (C.D. Cal. May 22, 2024). As Petitioner cannot obtain the relief he seeks in the petition, Respondent's motion to dismiss should be granted.

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Petitioner's motion to amend (ECF No. 10) be DENIED;

2. Respondent's motion to dismiss (ECF No. 9) be GRANTED; and

3. The petition for writ of habeas corpus be DISMISSED.

///

---

[4] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted)). See also Raygoza-Garcia, 902 F.3d at 1001 ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

Further, the Clerk of Court is DIRECTED to randomly assign this action to a District Judge.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 11, 2024**

UNITED STATES MAGISTRATE JUDGE